TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
JEFFREY M. CHEMERINSKY (Cal. Bar No. 270756)
JOSEPH D. AXELRAD (Cal. Bar No. 274580)
Assistant United States Attorney
Violent and Organized Crime Section
     1300 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-6520
     Facsimile: (213) 894-0141
     E-mail:    jeffrey.chemerinsky@usdoj.gov
                Joseph.axelrad@usdoj.gov

Attorneys for Applicant
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 21-296-JFW |
|---|---|
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION |
| v. | Sentencing Date: November 29, 2021 |
| FRANCISCO JAVIER HERNANDEZ MARTINEZ, | |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California, hereby submits its position with respect to sentencing for defendant FRANCISCO JAVIER HERNANDEZ MARTINEZ.

//

//

The government's position is based on the attached memorandum of points and authorities, the files and records in this case, and such additional evidence and argument as may be presented at the hearing on this matter.

Dated: November 18, 2021     Respectfully submitted,

TRACY L. WILKISON
United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

*/s/*
JEFFREY M. CHEMERINSKY
JOSEPH D. AXELRAD
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Defendant Francisco Javier Hernandez Martinez ("defendant") was a part of a brutal kidnapping for ransom scheme. Defendant's role was vital to the scheme – along with his co-conspirators, he would pick up the ransom money in the United States to ultimately funnel it back to the kidnappers in Mexico. He served this role repeatedly. Considerable coordination with the kidnappers and planning went into defendant's role. Although he inevitably will try to cast himself as no more than a bit player in a larger scheme, the Court should view such arguments skeptically. Based on his location in the United States and his willingness to repeatedly meet with victims to collect ransom money, his role was vital to the kidnapping organization. For his important role in the kidnapping organization, a strong sanction is appropriate. The government respectfully agrees with the United States Probation Office and recommends that the Court impose the statutory maximum sentence available, 5 years' imprisonment, followed by 3 years' supervised release, $117,980 in restitution, and a special assessment of $100. The government believes such a sentence is sufficient but not greater than necessary to accomplish the goals set forth in 18 U.S.C. § 3553(a).

**II.   STATEMENT OF FACTS**

A summary of the relevant facts is set forth in the Presentence Investigation Report ("PSR"), paragraphs 12-49.

Defendant and his co-conspirators Edgar Hernandez Lemus and Junior Almendarez Martinez repeatedly entered various large stores in order to collect ransom paid to release kidnapped victims in Mexico. The scheme was both brutal and prolific. Indeed, victims were

brutally assaulted, including female victims who were raped. Although defendant may deny his knowledge of such brutality, such horrors were a foreseeable consequence of the scheme in which he was engaged. For example, on May 26, 2021, defendant personally picked up ransom for the release of victim E.C.C., who was repeatedly raped while held by the kidnappers. Defendant's repeated actions prolonged the kidnapping conspiracy by continuously funneling the proceeds back to Mexico. Further, although the PSR and Plea Agreement only discuss three kidnappings and ransom payment, there is no reasonable dispute that defendant was involved in many additional ransom payments.

## III. RESPONSE TO THE PRESENTENCE INVESTIGATION REPORT

### A. Probation's Guidelines Calculation

Probation concluded that defendant has a total offense level of 17. PSR, ¶ 72. This calculation is based on the following:

| | |
|---|---|
| Base offense (U.S.S.G. § 2B1.1) | 6 |
| Loss greater than $95,000 (§ 2B1.1(b)(1)(E)) | +8 |
| Financial Hardship (§ 2B3.1(b)(2)(A)(iii)) | +2 |
| Scheme Outside the United States (§ 2B1.1(b)(10)(B)) | +2 |
| Risk of death or serious bodily injury (§ 2B1.1(b)(16)) | +2 |
| Acceptance of Responsibility (3E1.1(a), (b) | -3 |
| <u>Total Offense Level</u> | <u>17</u> |

### B. Plea Agreement and Government's Calculation

#### 1. Plea Agreement

The Plea Agreement calculates defendant's offense level as follows:

| | |
|---|---|
| Base offense (U.S.S.G. § 2B1.1) | 6 |
| Loss greater than $40,000 (§ 2B1.1(b)(1)(E)) | +4 |
| Financial Hardship (§ 2B3.1(b)(2)(A)(iii)) | +2 |

| | |
|---|---:|
| Scheme Outside the United States (§ 2B1.1(b)(10)(B)) | +2 |
| Multi-Count Adjustment (§ 3D1.1) | +2 |
| Acceptance of Responsibility (§ 3E1.1(a), (b)) | -3 |
| <u>Total Offense Level</u> | 13 |

Although the Plea Agreement states a loss of greater $40,000, the government believes that this was a typographical error and the parties meant to stipulate to a loss of more than $15,000. The government's intent at the time was to calculate each kidnapping and ransom event as discrete and separate events, resulting in a multi-count calculation. This calculation, with each kidnapping calculated as a separate event for purposes of the Guidelines and then application of a multi-count adjustment, accounts for the different victims in each kidnapping. The government respectfully apologizes for its error in the loss amount and for any confusion it causes.

  2. <u>Additional Offense Characteristics and Enhancements</u>

In the Plea Agreement, the parties reserved the right to argue for additional specific offense characteristics, adjustments, and departures under the Guidelines. (CR 41, p. 8.) The government agrees with Probation that a 2-level enhancement applies because of the risk of death or serious bodily injury (§ 2B1.1(b)(16)). PSR, ¶ 61.

In addition, the government believes that a 2-level role enhancement should apply, based on defendant's supervision and management of another participant, namely, Junior Almendarez Martinez. <u>United States v. House</u>, 883 F.3d 720, 724 (7th Cir. 2018) ("[T]he primary goal in applying § 3B1.1 should be to make a 'commonsense judgment about the defendant's relative culpability given his status in the criminal hierarchy.'"). Defendant, along

3

with Edgar Hernandez Lemus, jointly managed the ransom collection operation. The evidence shows that they jointly delegated tasks to Almendarez, including sending money to Mexico through Moneygram and the transportation of the ransom proceeds on June 1, 2021 in an Uber. This is further shown by the fact that all phone contacts with Mexico appeared to go through defendant and Lemus, rather than through Almendarez. U.S.S.G. §3B1.1, comment. (n.2); see also United States v. Lewis, 976 F.3d 787, 798 (8th Cir. 2020) ("A defendant may be subject to the enhancement even if he managed or supervised only one participant, limited to a single transaction." (citation omitted)); United States v. Savage, 885 F.3d 212, 229 (4th Cir. 2018) ("[T]he enhancement is justified if the defendant managed or supervised the activities of at least one other person in a scheme that involved five or more participants." (citations omitted)); United States v. Ranjel, 872 F.3d 815, 820 (7th Cir. 2017) ("The enhancement applies if the defendant managed or supervised 'one or more other participants' in criminal activity that involved five or more people."); United States v. Craig, 808 F.3d 1249, 1259 (10th Cir. 2015) ("The Guideline requires only a conclusion that [the defendant] supervised at least one such participant; it does not require the court to identify specific examples." (citations omitted)).

The adoption of the Plea Agreement's calculations plus the application of both additional enhancements gives defendant a total offense level of 17.

**C. Criminal History Calculation**

Probation concluded that defendant has no criminal history points, resulting in Criminal History Category I. PSR, ¶ 78. The government agrees with this calculation.

4

**IV. Analysis of § 3553(a) Factors**

    **A.    Legal Framework**

"All sentencing proceedings are to begin by determining the applicable Guidelines range," which serves as "the starting point and the initial benchmark" for determining a reasonable sentence. United States v. Carty, 520 F.3d 984, 991 (9th Cir. 2008) (internal quotation marks and citation omitted). The parties should then be given an opportunity to argue for what they believe is an appropriate sentence. Id. Following argument by the parties, the Court must consider each of the sentencing factors listed in 18 U.S.C. § 3553(a), including the applicable Guidelines range, "to decide if [those factors] support the sentence suggested by the parties." Id.; see also Gall v. United States, 552 U.S. 38, 49 (2007). In the end, the Court must impose a sentence that is "sufficient, but not greater than necessary," to reflect the offense's seriousness, to promote respect for the law, and to provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment. See 18 U.S.C. § 3353(a); Carty, 520 F.3d at 991.

    **B.    The § 3553(a) Factors**

The government submits that a sentence of five years imprisonment is appropriate under the circumstances. The violent, terroristic nature of the criminal conduct in which defendant was involved cannot be overstated. Victims of these kidnappings will remain traumatized for their entire lives. These also crimes preyed upon the vulnerable – immigrants in the United States and those with limited financial means in Mexico looking to cross into the United

States. Victims in Mexico were treated with brutality and cruelty. The sexual abuse suffered upon the kidnapped victims will undoubtedly leave lasting scars. The helplessness that the family members in the United States felt in trying to collect money for the ransom only furthered this emotional suffering. Defendant, who came face to face with the ransom paying family members, cannot claim to be unaware of the damage he was inflicting. Further, while the Plea Agreement and PSR only lists a few victims and incidents there is undoubtedly many more unidentified victims, too afraid to come forward, which the Court may consider in assessing the § 3553 factors. The existence of such additional victims is reflected both in the detailed ledger found in defendant's residence (which only begins in late-April 2021) and the fact that defendant possessed more than $60,000 in cash in February 2021.

Beyond the emotional strain, victims with very limited financial means will also suffer financial difficulties based on the ransom payments they made. Defendant's pattern of criminal conduct was extremely serious, demonstrates a complete lack of respect for the law, and endangers the safety of the community.

The punishment requested serves the purposes of general deterrence. The sentence makes clear that such ransom schemes cannot be tolerated, even for those who do not directly kidnap the victims and who attempt to insulate themselves from the direct violence.

**V.   CONCLUSION**

For the foregoing reasons, the government respectfully requests that the Court sentence defendant to 5 years' imprisonment. In addition, the government respectfully requests the Court order

defendant to serve three years of supervised release and pay $117,980 in restitution.